UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                   :

SHAQUILLE DINKINS,                                     :

                            Plaintiff,           :

                                              :          19 Civ. 2336 (JPC) (KHP)

              -v-                             :

                                              :          <u>OPINION AND ORDER</u>

GUSTAVE *et al.*,                                    :

                         Defendants.       :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Plaintiff Shaquille Dinkins, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants the City of New York, New York City Department of Correction, Captain Gustave, Captain Mitchell, Correction Officer ("C.O.") Humphries, C.O. Young, and C.O. Mayo, arising from an alleged improper strip search and subsequent use of force on March 1, 2019 while Plaintiff was a pretrial detainee at the George R. Vierno Center ("GRVC") on Rikers Island. Dkt. 2 ("Complaint"). On January 12, 2022, the Honorable Katharine H. Parker, United States Magistrate Judge, issued a Report and Recommendation, recommending that Defendants' motion for summary judgment be granted in part and denied in part. Dkt. 95 ("R&R"). Judge Parker liberally construed the Complaint in the light most favorable to Plaintiff as asserting claims for sexual abuse against C.O. Young; excessive force against C.O. Young, C.O. Mayo, and C.O. Humphries; deliberate indifference to Plaintiff's medical needs and conditions of confinement against C.O. Mayo; and failure to intervene against Captain Mitchell and Captain Gustave in connection with the alleged sexual abuse and excessive force. *Id.* at 1-2. Judge Parker recommends that this Court grant Defendants' motion for summary judgment as to the excessive

force claims, the medical needs and conditions of confinement claims, the failure to intervene claim against Captain Mitchell as to the excessive force, the failure to intervene claim against Captain Gustave, and any claims against the City of New York. *Id.* at 19-25, 33-37. Judge Parker further recommends denial of Defendants' motion for summary judgment as to the claims of sexual abuse against C.O. Young and failure to intervene against Captain Mitchell with regard to that alleged sexual abuse. *Id.* at 11-18, 31-33, 37.

On January 26, 2022, Defendants submitted objections to the Report and Recommendation, arguing that the undersigned "should decline to adopt the Report insofar as it: (a) construed plaintiff's allegations as advancing a failure to intervene claim against Captain Mitchell in connection with C.O. Young's alleged sexual abuse of plaintiff; and (b) concluded that a reasonably jury could find that Captain Mitchell could have intervened in C.O. Young's alleged sexual abuse of plaintiff inside the search pen at GRVC on March 1, 2019." Dkt. 96 ("Objections") at 2-3. Defendants also argue that "Plaintiff's failure to comply with his Court-ordered obligation to file a notice of change of address warrants complete dismissal of any remaining claims in this action with prejudice, pursuant to Rule 41(b)." *Id.* at 4. Plaintiff has not objected to the Report and Recommendation. For the reasons stated below, the Court adopts the Report and Recommendation in part, and declines to adopt it in part. Defendants' motion for summary judgment is granted as to the excessive force claims, the medical needs and conditions of confinement claims, any failure to intervene claims, and any claims against the City of New York, and is denied as to the sexual abuse claim against C.O. Young.

## I.   Background

The Court refers to the Report and Recommendation for a comprehensive description of the facts and procedural history of this case, and only provides a brief overview here. Plaintiff filed the Complaint on March 14, 2019. Plaintiff alleges that, on March 1, 2019, he was subjected

2

to a body search while detained at the GRVC.  Complaint at 4.  After Plaintiff refused to be searched by Captain Gustave, he was "cuffed and escorted" to "seg intake" and brought to a search area, at which point "Captain Mitchell, C.O. Humphries, C.O. Young, and a few more officers came into the search area." *Id.*  Plaintiff alleges that he was searched by C.O. Young, who, in the process of conducting the search, "grabbed [Plaintiff's] privates." *Id.*  Plaintiff then asked Captain Mitchell to remove C.O. Young from the search area, which Captain Mitchell did. *Id.*  Plaintiff alleges that after Captain Mitchell had C.O. Young removed, "C.O. Humphries and other officers started bending [Plaintiff's] arms, and punching [him] in [his] lower back." *Id.*  Thereafter, Plaintiff was "placed into a cell with no mattress, bedframe, seat, or anything for approx[imately] 5 hours and was cuffed behind [his] back for approx[imately] 30 minutes." *Id.*  Plaintiff alleges that he developed chest pains during this time but C.O. Mayo denied his request for medical attention. *Id.*  Plaintiff contends that, as a result of this incident, he sustained lacerations to his left wrist, right wrist, lower back, and left side; swelling in his lower back; and chest pains, and he "had to go for x-ray" and was prescribed pain medication and a muscle relaxer. *Id.* at 5.

This case was originally assigned to the Honorable George B. Daniels.  On June 24, 2019, Judge Daniels referred the case to Judge Parker for a general pretrial supervision and to issue a report and recommendation on any dispositive motions filed by the parties.  Dkt. 15.  On October 5, 2020, the case was reassigned from Judge Daniels to the undersigned.

On July 16, 2021, after the conclusion of discovery, Defendants moved for summary judgment on all of Plaintiff's claims.[1]  Dkts. 81-86.  Plaintiff opposed Defendants' motion on or about August 3, 2021, Dkt. 87 ("Opposition"), and Defendants replied on September 10, 2021,

---

[1] In their moving papers, Defendants construe the Complaint "liberally" to assert "unlawful search, excessive force, deliberate indifference, and unconstitutional conditions of confinement claims, stemming from the incident on March 1, 2019."  Dkt. 85 at 4.

3

Dkt. 88.  On October 26, 2021, the Court was advised by staff at the Wende Correctional Facility ("Wende C.F."), the most recent address of record for Plaintiff in this action, that Plaintiff had been released from state custody on or about September 8, 2021.  Dkt. 90.  During a conference held on November 2, 2021, at which Plaintiff did not appear, Defendants advised the Court that they were not aware of Plaintiff's current address following his release from the Wende C.F.

On January 12, 2022, the Report and Recommendation was issued and mailed to Plaintiff at the Wende C.F.  On January 26, 2022, Defendants filed Objections to the Report and Recommendation.  On February 17, 2022, the Court ordered Defendants to "provide the undersigned with the unredacted excerpt of pages 50-51 of Plaintiff's deposition transcript," where Plaintiff identified his "most recent address" prior to his then incarceration.  Dkt. 97.  The Court requested this information "to ensure that Judge Parker's Report and Recommendation has been sent to any possible address for Plaintiff, in light of his failure to file any objections."  *Id.*

In addition to providing the Court with the unredacted excerpt from Plaintiff's deposition transcript, Defendants informed the Court on February 18, 2022 that they "recently learned that plaintiff, in a separate action brought in the Southern District of New York, has updated his address of record following his release from custody," and submitted, upon information and belief, that Plaintiff's current address may be "Shaquille Dinkins, 80 Schenectady Avenue, Apartment 4B, Brooklyn, NY 11213."[2]  Dkt. 98 at 1-2.  That same day, the Court issued an Order ("February 18 Order"), directing the Clerk of Court to mail a copy of the Report and Recommendation, Defendants' Objections, and the Court's February 18 Order to Plaintiff at that Schenectady Avenue address, and extending the deadline for Plaintiff "(1) to file written objections to the Report and

---

[2] It appears that Plaintiff currently has another active matter in this District before the Honorable John G. Koeltl.  *See Dinkins v. C.O. Regalado et al.*, No. 21 Civ. 6285 (JGK).

4

Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, and (2) to respond to Defendant's Objection pursuant to Rule 72(b)(2)" until "seventeen days from the service of [the February 18] Order, the Report and Recommendation, and Defendants' Objection."  Dkt. 99 at 1-2.  The Court also mailed a copy of the February 18 Order, the Report and Recommendation, and Defendants' Objections to Plaintiff at the address that Plaintiff reported at his deposition.  On February 22, 2022, the Report and Recommendation that had been mailed to Plaintiff at the Wende C.F. was returned to the Court as "Unable To Forward, Return to Sender, PAROLED 9-8-21, FORWARD, NOTIFY SENDER OF NEW ADDRESS."  On February 24, 2022, the Report and Recommendation was mailed to Plaintiff at "SHAQUILL DINKINS DIN: 19A2359 C/O NYS PAROLE Brooklyn I Area Office 15 Second Avenue Brooklyn, NY 11215 ATTN: OFFICER B. MACK."[3]  To date, Plaintiff has not filed a notice of change of address with the Court, nor has he filed any objection to the Report and Recommendation or any response to Defendants' Objections.

## II.   Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Within fourteen days after a party has been served with a copy of the magistrate judge's report and recommendation, the party "may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  If a party submits a proper objection to any part of the magistrate judge's disposition, the district court conducts *de novo* review of the contested section.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

---

[3] The Court's Clerk's Office obtained this possible address for Plaintiff, which appears to identify his parole officer, presumably when the Wende C.F. returned the Report and Recommendation.

5

To be proper, an objection must be "clearly aimed at particular findings," *Hernandez v. City of New York*, No. 11 Civ. 6644 (KPF) (DF), 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (quoting *Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14 Civ. 675 (RJS), 2014 WL 6982929, at *2 (S.D.N.Y. Dec. 10, 2014)), and may not be "conclusory or general," *id.* (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009)).  Parties may neither "regurgitate the original briefs to the magistrate judge" nor raise new arguments not raised to the magistrate judge in the first instance.  *Id.*; *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).  The court also reviews for clear error those parts of the report and recommendation to which no party has filed proper or timely objections.  28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)).  "A magistrate judge's decision is clearly erroneous only if the district court is 'left with the definite and firm conviction that a mistake has been committed.'"  *Cameron v. Cunningham*, No. 13 Civ. 5872 (KPF) (FM), 2014 WL 4449794, at *2 (S.D.N.Y. Sept. 9, 2014) (quoting *Easley v. Cromartie*, 532 U.S. 234, 235, 242 (2001)).

### III.   Discussion

**A.  Motion for Summary Judgment**

As previously mentioned, the Report and Recommendation recommends that the undersigned grant Defendants' motion for summary judgment as to all claims except for the claims of sexual abuse against C.O. Young and failure to intervene claim against Captain Mitchell as to C.O. Young's alleged sexual abuse.  R&R at 11-18, 31-33, 37.  Defendants' Objections concern

6

the recommendation as to the failure to intervene claim against Captain Mitchell.[4]  Defendants argue that "the Report erred in construing plaintiff's allegations as raising a failure to intervene claim against Captain Mitchell" and that "even if plaintiff had intended to advance a failure to intervene claim in this matter, any such claim fails as a matter of law."  Objections 2-3.  The Court agrees with Defendants.[5]

"It is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest."  *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted); *Minus v. Spillane*, No. 17 Civ. 4623 (JMF), 2019 WL 6498258, at *1 (S.D.N.Y. Dec. 3, 2019) (construing the *pro se* pleadings "very liberally" to assert claims under federal and state law even though "the pleadings do not list specific causes of action").  Nevertheless, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."  *Jones v. City of New York*, No. 18 Civ. 1937 (VSB), 2020 WL 1644009, at *5 (S.D.N.Y. Apr. 2, 2020) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).  Here, after affording the Complaint a liberal construction, the undersigned does not read it as pleading that Captain Mitchell failed to intervene as to C.O. Young's alleged sexual abuse.  The only mention of Captain Mitchell in the Complaint

---

[4] Defendants have not objected to the recommendation that their motion for summary judgment be denied as to Plaintiff's sexual abuse claim against C.O. Young.

[5] As noted above, in general, it is not appropriate for a party to raise new arguments in an objection to a report and recommendation that was not previously made before the magistrate judge.  *See Hernandez*, 2015 WL 231830, at *1.  But here, the Report and Recommendation denied summary judgment as to a failure to intervene claim against Captain Mitchell arising from C.O. Young's alleged sexual abuse.  The Court finds it understandable that Defendants, even after affording the *pro se* Complaint a liberal construction, would not have interpreted the Complaint as pleading a failure to intervene claim against Captain Mitchell as to C.O. Young's alleged sexual abuse.  Nor does the Court read either Plaintiff's deposition testimony or his Opposition, liberally construed, as advancing a failure to intervene claim against Captain Mitchell as to the alleged sexual abuse.  Accordingly, the Court does not fault Defendants for not previously raising these arguments before the magistrate judge.

is when Plaintiff contends that after the alleged abuse by C.O. Young, he "asked Capt. Mitchell to remove [C.O. Young] from the search area. At which time [C.O. Young] was removed, and C.O. Humphries, and other officers started bending [Plaintiff's] arms, and punching [him] in [his] lower back." Complaint at 4.[6] This is insufficient to suggest that Captain Mitchell failed to intervene as to C.O. Young's alleged sexual abuse.

The closest Plaintiff comes to suggesting a failure to intervene claim against Captain Mitchell is when he was asked at his deposition why he was suing Captain Mitchell. But even then, Plaintiff at most referred to Captain Mitchell's failure to intervene as to the alleged excessive force. In fact, Plaintiff conceded that Captain Mitchell intervened with respect to the alleged sexual abuse and deescalated that incident. The relevant excerpt from Plaintiff's deposition reads as follows:

> Q. And what happened with Captain Mitchell?
>
> A. Captain Mitchell, you're talking about this incident, right?
>
> Q. Mm-hm.
>
> A. Captain Mitchell, he just orders the officers, Officer Young to get out of the pen, and he really just witnessed everything. He didn't really partake in the incident. He was just the supervisor. He was there.
>
> Q. And why are you suing Captain Mitchell?
>
> A. Because in his job description as a captain, as a correction officer, as a dep, as a warden, you are supposed to try -- it's just like even with police in the streets, NYPD, wherever you're from -- they're supposed to -- they are trained in the[ir] job to deescalate situations or try your best to deescalate situations before they blow out of proportion. And he did that one time, and

---

[6] Similarly, in his Opposition to Defendants' motion for summary judgment, Plaintiff does not press any arguments that the Court reads as suggesting that he was asserting a failure to intervene claim against Captain Mitchell. *See generally* Opposition.

8

> that was to get Office[r] Young out of the bullpen with us, but on[c]e the officer started punching me in my back, he didn't say anything. He didn't try to stop it or do anything, so he plays a part as the supervisor.

Dkt. 94-1 ("Dinkins Dep. Tr.") at 177:14-178:8. As reflected above, Plaintiff acknowledged that Captain Mitchell "deescalate[d]" the situation "one time" by "get[ting] Office[r] Young out of the bullpen." *Id.* at 178:4-5. That de-escalation was in connection with the alleged sexual abuse.

And while Plaintiff's testimony that Captain Mitchell "didn't try to stop it or do anything" once "the officer started punching [him] in [the] back," *id.* at 178:6-7, could arguably suggest a failure to intervene theory against Captain Mitchell in connection with Plaintiff's *excessive force claims*, the Report and Recommendation recommends granting summary judgment on the excessive force claims (and the undersigned agrees with that recommendation). R&R at 18-25. Dismissal of the excessive force claims precludes a failure to intervene claim against Captain Mitchell as to that alleged excessive force. *Id.* at 33 ("[S]ince I recommend that granting summary judgment is appropriate for Defendants Mayo, Young and Humphries on the excessive force claims, summary judgment is also appropriate on the failure to intervene claim against Mitchell predicated upon the excessive force claims."); *see also Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (affirming the district court's dismissal of the plaintiff's failure to intervene claim because "the underlying constitutional claims were properly dismissed"); *Arbuckle v. City of New York*, No. 14 Civ. 10248 (ER), 2016 WL 5793741, at *14 (S.D.N.Y. Sept. 30, 2016) ("[A] failure to intervene claim is contingent only on the underlying claim.").

In addition, assuming *arguendo* that Plaintiff has pleaded a failure to intervene claim against Captain Mitchell as to the sexual abuse allegedly committed by C.O. Young, the Court finds that summary judgment dismissing such a claim would be appropriate. A court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In

determining whether a genuine factual dispute exists, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). A court must grant summary judgment "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "When a *pro se* litigant is involved, the same standards for summary judgment apply, but the *pro se* litigant should be given special latitude in responding to a summary judgment motion." *Roundtree v. New York City*, No. 15 Civ. 8198 (JPC), 2021 WL 4504471, at *4 (S.D.N.Y. Sept. 30, 2021) (internal quotation marks omitted). This principle, however, has limits and "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). "A pro se party's bald assertions unsupported by evidence are thus insufficient to overcome a motion for summary judgment." *Roundtree*, 2021 WL 4504471, at *4 (internal quotation marks omitted).

The evidence, viewed in the light most favorable to Plaintiff, would not permit a finding that Captain Mitchell violated section 1983 by failing to intervene as to the sexual abuse allegation. To establish a claim for failure to intervene under section 1983, a plaintiff must show "(i) the officer's failure 'permitted fellow officers to violate [the plaintiff's] clearly established statutory or constitutional rights,' and (ii) it was 'objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights.'" *Buchy v. City of White Plains*, No. 14 Civ. 1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015) (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)); *John v. City of New York*, 406 F. Supp. 3d 240, 246 (E.D.N.Y. 2017) ("A police officer 'has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers.'" (quoting *O'Neill*

*v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988)). The length of the constitutional violation must be of "sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator." *O'Neill*, 839 F.2d at 11-12. Likewise, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

As noted in the Report and Recommendation, "Plaintiff testified that Captain Mitchell ordered the officers around, told Young to get out of the search pen, and witnessed everything because he was the supervisor in the area where he was strip searched." R&R at 32 (citing Dinkins Dep. Tr. at 177-178). But as mentioned above, Plaintiff acknowledged during this part of his deposition testimony that Captain Mitchell did "deescalate [the] situation[] before [it] bl[ew] out of proportion . . . that one time, and that was to get Office[r] Young out of the bullpen with us." Dinkins Dep. Tr. at 178:3-5. Plaintiff also testified that he could not see Captain Mitchell when he entered the pen with C.O. Humphries and C.O. Young, *id.* at 84:4-6, and that he could not see anyone and did not think anyone could see him when C.O. Young grabbed his genitals, *id.* at 95:24-96:7 ("Q. When he grabbed what you said, the shaft, who could you see? A. I couldn't see nobody. I could only see the door to the seg intake, the magnetometer, and the C.O. bubble, part of the C.O. bubble. Q. From what you could see, do you think anyone could see you? A. No, besides the camera that was in the pen with me."). Without Captain Mitchell being present inside the pen or even being able to see the alleged sexual abuse, he cannot be faulted for failing to intervene at the moment any assault occurred.

Nonetheless, Captain Mitchell did intervene and he did so promptly. Plaintiff testified that when he "started raising [his] voice," Captain Mitchell arrived and removed C.O. Young from the pen. *Id.* at 85:2-9 ("And while he was standing up, like when he was coming back to the standing up position, he grabbed my genitals. He made a comment, and I started raising my voice, so

11

Captain Mitchell came. That's when Captain Mitchell comes into the picture. I'm telling him what his officer did, so I asked him to remove him out of search pen, which Captain Mitchell removed the officer."); *see also id.* 97:7-12 ("Q. All right. So what did you say when he grabbed your genitals, when he grabbed your shaft with his left hand? A. I started raising my voice, I'm like, 'what you doing?' Captain Mitchell, I was calling for Captain Mitchell, and Captain Mitchell came to the bullpen."). And Plaintiff conceded at his deposition that Captain Mitchell's response was immediate. Plaintiff testified that it took Captain Mitchell "a matter of seconds" to arrive inside the pen after he "started screaming," *id.* at 97:18-25, and that upon arriving, Captain Mitchell asked "what's going on," *id.* at 99:11-16. When Plaintiff explained to Captain Mitchell that C.O. Young "grabbed [his] genitals and asked [Captain Mitchell] if he could remove [C.O. Young] from the search area," Captain Mitchell "told [C.O. Young] to remove himself from the search area" even though C.O. Young "tried to deny it." *Id.* at 99:17-100:12. C.O. Young's departure from the search area brought an end to any alleged sexual abuse-related conduct. The speed of Captain Mitchell's response and, as Plaintiff himself has acknowledged, Captain Mitchell's de-escalation of the situation did not amount to a violation of Plaintiff's rights, let alone one of "sufficient duration to support a conclusion that [Captain Mitchell] stood by without trying to assist the victim." *O'Neill*, 839 F.2d at 11-12. Thus, viewing the evidence in the light most favorable to Plaintiff, no reasonable fact finder could conclude that Captain Mitchell failed to intervene in connection with C.O. Young's alleged sexual abuse. *See, e.g.*, *Charles v. Rockland Cnty. Office of the Sheriff*, No. 16 Civ. 166 (VB), 2019 WL 1299804, at *4 (S.D.N.Y. Mar. 21, 2019) (granting summary judgment dismissing a failure to intervene claim where "[v]ideo footage depicts [the defendant corrections officer] immediately running toward the assault with several additional officers arriving seventeen seconds later"); *Baker v. Tarascio*, No. 05 Civ. 548 (RNC), 2009 WL 581608, at *2, 4 (D. Conn. Mar. 6, 2009) (granting the defendants' motion for summary

judgment on a failure to intervene claim because the record showed that the correction officers intervened approximately thirty seconds after the start of the first fight and approximately five seconds after the start of the second fight). Accordingly, the Court grants summary judgment on any failure to intervene claim against Captain Mitchell as to C.O. Young's alleged sexual abuse.

Finally, the Court has reviewed the remainder of the Report and Recommendation to which Defendants and Plaintiff did not object, and finds it to be well-reasoned and its conclusions well-founded. The Court therefore also dismisses Plaintiff's excessive force claims, medical needs and conditions of confinement claims, failure to intervene claim against Captain Mitchell as to excessive force, failure to intervene claim against Captain Gustave, and all claims against the City of New York. The Court also denies Defendants' motion for summary judgment with respect to the sexual abuse claim against C.O. Young.

**B. Motion to Dismiss for Failure to Prosecute**

Defendants in their Objections request that the Court dismiss "any remaining claims in this action with prejudice, pursuant to Rule 41(b)." Objections at 4. According to Defendants, dismissal of this action is appropriate because Plaintiff has failed to advise the Court of his address changes, neither Defendants nor the Court are in contact with Plaintiff, Plaintiff was "warned previously that the Court may dismiss this action if he fails to submit a written notification if his address changes," and "there is no lesser sanction which would adequately protect the interests of the defendants, who will be largely unable to attempt to resolve this case in the event that the Report is adopted." *Id.* To determine whether a Rule 41(b) dismissal is appropriate, courts in the Second Circuit consider:

> 1) the duration of plaintiff's failures or non-compliance; 2) whether plaintiff had notice that such conduct would result in dismissal; 3) whether prejudice to the defendant is likely to result; 4) whether the court balanced its interest in managing its docket against plaintiff's interest in receiving an opportunity to be heard; and

       5) whether the court adequately consider the efficacy of a sanction less draconian than dismissal.

*Bafa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 53 (2d Cir. 2000).  Although "courts have routinely found that 'it is the plaintiff's responsibility to keep the Court informed of his current address, and failure to do so may justify dismissal for failure to prosecute, . . . the failure to provide a current address must not be considered in isolation, but rather in the context" of all five factors to determine whether dismissal is appropriate.  *Kuar v. Mawn*, No. 08 Civ. 4401 (JFB) (ETB), 2012 WL 3808620, at *4 (E.D.N.Y. Sept. 4, 2012).

      Considering these factors, the Court concludes that dismissal pursuant to Rule 41(b) is not warranted at this time.  Although Plaintiff has failed to apprise the Court and Defendants of his address change for over six months, Plaintiff previously complied with his obligation to provide an updated address to the Court.  *See* Dkts. 11, 17-18, 20, 51, 55.  Moreover, while Plaintiff did receive notice that his failure to provide the Court with any changes to his address may result in dismissal of this action, his failure to do so has not caused any significant delays in this action at this time, and the Court finds that there are sanctions less draconian than dismissal with prejudice.  Accordingly, Defendants' request to dismiss any surviving claims pursuant to Rule 41(b) is denied without prejudice.

      The Court will schedule a telephone conference in this action at which the parties are ordered to appear.  Plaintiff is hereby on notice that if he fails to appear at the telephone conference and does not otherwise convey to the Court his intention to continue to prosecute this action, including by notifying the Court of his change of address, the Court will permit Defendants to renew their request to dismiss pursuant to Rule 41(b).

## IV. Conclusion

For the foregoing reasons, the Court adopts the Report and Recommendation in part and declines to adopt it in part. The Court grants Defendants' motion for summary judgment as to the excess force claims, medical needs and conditions of confinement claims, any failure to intervene claims, and any claims against the City of New York, and dismisses those claims with prejudice. The Court finds that there remain material questions of fact as to Plaintiff's sexual abuse claim against C.O. Young, and denies Defendants' motion for summary judgment as to that claim. The Court also denies without prejudice Defendants' request to dismiss that remaining claim pursuant to Federal Rule of Civil Procedure 41(b).

It is hereby ORDERED that the parties shall appear for a telephone conference on April 7, 2022, at 1:00 p.m. At the scheduled time, the parties should call (866) 434-5269, access code 9176261. Plaintiff is advised that if he fails to appear for the April 7, 2022 conference and does not otherwise convey to the Court his intention to continue to prosecute this action, including by notifying the Court of his change of address, the Court may dismiss this action for failure to prosecute and/or for failure to comply with the Court's orders pursuant to Rule 41(b) without further notice.

The Clerk of Court is respectfully directed to close the motion pending on Docket Number 81, and to mail a copy of this Opinion and Order to Plaintiff at the following two addresses:

- Shaquille Dinkins, 80 Schenectady Avenue, Apartment 4B, Brooklyn, NY 11213; and

- Shaquille Dinkins, DIN: 19A2359, C/O NYS Parole Brooklyn I Area Office, 15 Second Avenue, Brooklyn, NY 11215, Attn: Officer B. Mack.

SO ORDERED.

Dated: March 25, 2022
New York, New York

JOHN P. CRONAN
United States District Judge

15